GENE A. BARFIELD AND WIFE, JUDY S. BARFIELD; STEVEN DOUGLAS MOSS AND
WIFE, LUANN PENNINGER MOSS; JOHNATHAN EDWARD HARDISON AND WIFE,
PAMELA B. HARDISON; AND WILLIAM R. COCHRAN AND WIFE, VIKKI S.
COCHRAN, PLAINTIFFS v. ELIEZER MARTY MATOS, DEFENDANT/THIRD-PARTY
PLAINTIFF v. COY L. McMANUS AND WIFE, MARGARET C. McMANUS; THE
REVOCABLE TRUST OF COY L. McMANUS, AS AMENDED; THE REVOCABLE
TRUST OF MARGARET C. McMANUS, AS AMENDED; SCOTT WHITTLE AND WIFE,
ELISABETH R. WHITTLE; AND PAUL GAVRILYUK AND WIFE, ALENA I. GAVRILYUK,
THIRD-PARTY DEFENDANTS

No. COA10-1090

(Filed 16 August 2011)

**1. Appeal and Error—scope of review—complex real estate transaction with multiple orders**

In a case involving a complicated set of real estate transactions, restrictive covenants, multiple claims and orders, and a prior appeal, the scope of review was limited to an order entered on 4 August 2009 and not an order entered on 9 December 2008.

**2. Appeal and Error—jurisdiction—first appeal interlocutory—summary judgment while appeal pending—final order**

The trial court had jurisdiction to hear summary judgment motion during the pendency of an appeal in that case where the appeal was interlocutory and non-appealable. Furthermore, the Court of Appeals had jurisdiction to hear an appeal from the summary judgment order where timely notice of appeal was given.

**3. Appeal and Error—jurisdiction—notice of appeal**

The appellate court did not have jurisdiction to review a 9 December 2008 summary judgment order where notice of appeal was never given.

**4. Appeal and Error—standard of review—summary judgment —prior order with findings**

The standard of review for an 8 April 2010 summary judgment order was *de novo*, although complicated by a 4 August 2009 order. The 4 August order was for a permanent injunction after a bench trial and included findings of fact. Those findings were binding on appeal and only the conclusions were considered *de novo*.

**5. Appeal and Error—notice of appeal not given—arguments dismissed**

Arguments as to the applicability of restrictive covenants were dismissed for lack of a notice of appeal or grounds for review by *certiorari*.

**6. Appeal and Error—preservation of issues—legal authority—not presented**

An argument concerning the application of restrictive covenants was abandoned on appeal where no legal authority or argument as to an abuse of discretion was presented.

**7. Deeds—restrictive covenants—matter of record**

The trial court properly granted summary judgment for the third-party defendants, the McManuses, on a claim for negligent misrepresentation in a restrictive covenants case. Mr. McManus told Matos, the third-party plaintiff, that there were no restrictions on the property preventing farm use and Matos did not realize that he was buying property subject to restrictions of any sort, but the restrictive covenants were a matter of record which should have been discovered by Matos's attorney.

**8. Deeds—restrictive covenants—breach of warranty claim**

The trial court properly granted summary judgment dismissing a claim for breach of warranty of title arising from restrictive covenants that were not discovered until after the sale of the land but were of record.

Appeal by defendant/third-party plaintiff from order entered on or about 8 April 2010 by Judge Timothy Lee Patti in Superior Court, Mecklenburg County. Heard in the Court of Appeals 9 February 2011.

*Bernhardt & Strawser, P.A., by Scott I. Perle and Griffin, Brunson & Wood, L.L.P., by N. Deane Brunson, for plaintiff appellees.*

*Johnston, Allison & Hord, P.A., by Patrick E. Kelly and Kathleen K. Lucchesi, for defendant/third-party plaintiff appellant.*

*Ferguson, Scarbrough, Hayes, Hawkins & DeMay, P.A., by James E. Scarbrough, for third-party defendant appellees.*

STROUD, Judge.

Third-party defendant appellees, the McManuses, argue that this case arises from "two unintentional errors" made "by four honest men: namely, McManus and his surveyor and Matos and his attorney." As a result of these unintentional errors, defendant/third-party plaintiff Eliezer Marty Matos ("Matos") purchased land which was subject to restrictive covenants without realizing that the land was restricted. This is the unavoidable result of the rule established by *Reed v. Elmore*, 246 N.C. 221, 98 S.E.2d 360 (1957) which has been criticized by courts and commentators alike, but our courts are bound by it as precedent. However, as Matos failed to appeal from the trial court's order addressing the disputed restrictions, we cannot address Matos' arguments as to *Reed* and the disputed restrictions. Accordingly, we affirm the trial court's orders granting a permanent injunction in favor of plaintiffs and summary judgment, dismissing Matos's claims against the McManuses.

## I. Background

This case arises from a rather complex series of real estate transactions related to the subdivision of land originally owned by Coy L. McManus and his wife, Margaret C. McManus (referred collectively as "the McManuses").

## A. The Creation of Tract 7

The McManuses acquired a 34.523 acre tract of land ("the land") in 1965; approximately 7 acres of the land is located in Cabarrus County and the rest is in Mecklenburg County. On 2 February 2001, the McManuses each conveyed his or her interest in the land to their revocable trusts, the Revocable Trust of Coy L. McManus, dated 2 October 2000 and the Revocable Trust of Margaret C. McManus, dated 2 October 2000 ("the McManus trusts"), but the deed to the McManus trusts was recorded only in Cabarrus County and not in Mecklenburg County. Thus, the record owner of the land in Mecklenburg County remained the McManuses individually; the McManus trusts were the record owners of the land in Cabarrus County.

In 2005, the McManuses decided to subdivide their land and sell some of it. Mr. McManus had a surveyor prepare a map ("the first map") dividing the land into 9 tracts, numbered 1 through 9, although the first map was never recorded. In April 2005, Mr. McManus put up a "for sale" sign on the land, and Matos saw the sign and stopped to talk to Mr. McManus about purchasing Tracts 8 and 9. Matos told Mr.

McManus that he wanted to use the tracts as a farm, and Mr. McManus told Matos that there were no restrictions on the land that would prevent farm use.

On 26 May 2005, a new map was prepared ("the second map") and recorded with both the Cabarrus and Mecklenburg County Registers of Deeds. Although the second map also subdivided the same 34.523 acres, the second map divided the land into only seven tracts instead of nine. On the second map, the tracts which were designated as Tracts 8 and 9 on the first map were combined into one tract, now called Tract 7. Tracts 6 and 7 on the first map were combined into one tract, designated as Tract 6.

B. The Contract with Matos

On 26 May 2005, the McManuses individually and Matos entered into a contract for the sale of Tract 7, with an area of 12.458 acres, as shown on the second map. It stated that Tract 7 was located entirely in Mecklenburg County. The contract also included a provision that there were no restrictions on the use of the property preventing "[r]esidential or farm use."

C. The Moss Deed and Restrictive Covenants

Prior to the closing of the sale of Tract 7 to Matos, on 16 June 2005, the McManuses individually, but not the McManus trusts, conveyed Tract 2 as shown on the second map to Steven Moss and his wife Luann Moss. Tract 2 was located in both Mecklenburg and Cabarrus counties. The Moss deed was recorded in Cabarrus County on 16 June 2005 and in Mecklenburg County on 21 June 2005. The Moss deed included restrictive covenants applicable to Lots 1 through 7 of the second map, identified by reference to the plat recorded at map book 46, Page 92 in Cabarrus County and map book 43, page 685 in Mecklenburg County. The restrictive covenants state as follows, in pertinent part:

> Tracts 1 through 7 shall be held, transferred, sold, conveyed and occupied subject to the covenants and restrictions set forth all of which shall run with the land and be binding on all persons owning any right, title or interest in any of said parcels, their heirs, successors and assigns, and shall inure to the benefit of, and be enforceable by, each parcel owner.

The covenants generally include the following restrictions: (1) all homes constructed on the property must be "stick built[;]" (2) dwellings, outbuildings, and "any accessory feature to the dwelling or

BARFIELD v. MATOS

[215 N.C. App. 24 (2011)]

any other structure, including fencing and pools[,]" must be approved in advance by "the then owners of tracts 1 and 2 together with Mr. or Mrs. Coy L. McManus or the assignee of Mr. or Mrs. McManus[;]" (3) only one residence can be constructed on each tract, with at least 3000 square feet of heated floor space; (4) exterior finishes shall be "brick veneer, stone, cedar shakes, cement siding, Hardie plank or other approved pre-finished sidings;" (5) "flared end concrete pipe" must be used with gravel driveway before a house is built; (6) no chain link fences are permitted and other approved fencing shall not be located closer to the front of the house than the rear exterior wall; (7) "[i]llegal, noxious, and/or harmful" activities are prohibited; and (8) the covenants may be amended by a majority vote of tract owners, but any amendment must be approved by either Mr. or Mrs. McManus "for so long as they shall own property on Ben Black Road, McManus Road, or Belt Road."

D. The First Matos Deed

On 14 July 2005, the McManuses individually, but not the McManus trusts, conveyed Tract 7 to Matos by a general warranty deed prepared by Matos' attorney, William Hamel. Mr. Hamel performed the title search in Mecklenburg County but failed to discover the restrictive covenants contained in the Moss deed. In his deposition, Mr. Hamel admitted that he should have found these restrictions but the person doing the title search failed to read or obtain a copy of the entire Moss deed. No restrictive covenants are specifically mentioned in the Matos deed, although the deed did state, in pertinent part, as follows:

> Title to the property hereinabove described is subject to the following exceptions:
>
> The lien of all valid and enforceable easements, rights-of-way, restrictions, covenants, conditions, and restrictions of record; except, however, this instrument does not reimpose any of the same.

The Matos deed was also executed by Matos as grantee.

E. Deeds of Other Tracts

On 16 November 2005, the McManuses individually and as trustees of the McManus trusts conveyed Tract 1 to Gene and Judy Barfield. Tract 1 is located in both Cabarrus and Mecklenburg counties, so this deed was recorded in both counties. The deed includes the same restrictive covenants as the Moss deed. On 16 November 2005, the McManuses conveyed Tract 3 to Johnathan and Pamela

Hardison. Tract 3 is located in both Cabarrus and Mecklenburg counties, so this deed was recorded in both counties. This deed includes the same restrictive covenants as the Moss deed. On 5 December 2005, the McManuses deeded Tract 5 to William and Vikki Cochran. Tract 5 is entirely in Mecklenburg County, and the deed was recorded in Mecklenburg County only. This deed includes the same restrictive covenants as the Moss deed. On 2 February 2006, the McManuses deeded Tract 4 to James and Elisabeth Whittle. As Tract 4 is in both counties, the deed was recorded in both counties, and this deed also includes the same restrictive covenants as the Moss deed. On 13 June 2007 the McManuses conveyed Tract 6 to Pavil and Alena Gavrilyuk. As this tract is entirely in Mecklenburg County, the deed was recorded in Mecklenburg County only and it includes the same restrictive covenants as the Moss deed. Thus, the deeds for tracts one, three, four, five, and six included the same restrictive covenants as the Moss deed.

F. The Third Map and the Second Matos Deed

On 27 October 2005, a revised survey of the entire subdivision was recorded in both Mecklenburg County, at map book 47, page 101 and Cabarrus County, at map book 44, page 626 ("the third map"). The third map established new boundaries for Tracts 1 and 7, carving out a 1.447 acre portion of Tract 1 as shown on the second map and adding this portion to the land Matos had already purchased, Tract 7. The enlarged and newly constituted Tract 7 is located in both Cabarrus and Mecklenburg counties. On 24 August 2006, the McManuses individually and the McManus trusts conveyed the 1.447 acre tract as shown on the third map to Matos by a general warranty deed which was recorded in both counties. This deed did not specifically reference any restrictions, but just as the first Matos deed, stated as follows:

Title to the property hereinabove described is subject to the following exceptions:

The lien of all valid and enforceable easements, rights-of-way, restrictions, covenants, conditions, and restrictions of record; except, however, this instrument does not reimpose any of the same.

G. The Dispute

In July of 2007, Matos began installing "barbed wire fencing on his property to contain his cows and horses." On 16 August 2007,

plaintiffs' counsel sent a letter to Matos, notifying him that his fence was in violation of the restrictive covenants and asking him to "cease and desist" from installing the fencing and to remove the fence posts already installed by 27 August 2007; Matos instead "completed construction of the fencing."

On 9 October 2007, Gene and Judy Barfield, Steven and Luann Moss, Johnathan and Pamela Hardison, and William and Vikki Cochran (referred to collectively as "plaintiffs") filed a complaint against Matos for breach of the restrictive covenants, and requesting preliminary and permanent injunctive relief. On 4 January 2008, Matos filed his answer, denying plaintiffs' claims, raising several defenses, and making counterclaims for (1) a declaratory judgment that "both the 12.45 acre and 1.47 acre tracts conveyed to him by the McManuses are free and clear of the Restrictions[;]" and (2) for "equitable reformation of the Deed and/or maps of record to reflect the original intent of the McManuses and Matos that the Matos properties be free of the Restrictions." On or about 28 January 2008, plaintiffs filed a motion to dismiss Mato's counterclaims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) and (7). On or about 29 February 2008, Matos filed a motion to further amend his answer and counterclaim and to join necessary parties.

On 5 March 2008, the trial court entered an order granting plaintiffs' motion for a preliminary injunction and Matos' motion to join additional necessary parties, the McManuses and the McManus trusts, as well as the Whittles and the Gavrilyuks, who had purchased tracts of the subdivision after Matos' second deed. Pursuant to that order, on 4 April 2008, Matos filed an amended answer including his counterclaims and third-party claims against plaintiffs, the McManuses, and the McManus trusts for (1) declaratory judgment (2) reformation, (3) recession, (4) negligent misrepresentation, and (5) breach of warranty. On 16 June 2008, plaintiffs filed a motion to dismiss and strike defendant's counterclaims and asserting crossclaims for breach of covenant and negligent misrepresentation against the McManuses, and the McManus trusts.[1] On 19 June 2008, the McManuses and the McManus trusts, as third-party defendants, filed their answers to defendants' third-party claims, which included a

---

1. Although, Matos, in his answer and third-party complaint, and plaintiffs in their crossclaims, included the Whittles and the Gavrilyuks as third-party defendants, neither makes any allegations against these parties and these claims are restricted to third-party defendants the McManuses and the McManus trusts. Matos in his answer states that the Whittles and Gavrilyuks had been named as third-party defendants "solely to put them on notice of the pending action and because they have been deemed by the Court to be necessary parties in this action."

motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), and raised the affirmative defenses of contributory negligence, "cure of title by covenator[,]" failure to mitigate damages, and estoppel and waiver. On 16 July 2008, the McManuses and the McManus trusts, as third-party defendants, filed their answers to plaintiffs' crossclaims, raising the affirmative defenses of contributory negligence, estoppel and waiver, and lack of standing.

On 16 October 2008, plaintiffs filed a motion for partial summary judgment on Matos' counterclaims for declaratory judgment, reformation, and rescission; this motion was heard by the Honorable Robert C. Ervin on 10 November 2008. On 3 November 2008, the McManuses and the McManus trusts filed a motion for summary judgment as to Matos' third-party claims and plaintiffs' crossclaims. On 24 November 2008, plaintiffs filed a motion for permanent injunction and release of bond. On 4 December 2008, the McManuses' motion for summary judgment and plaintiff's motion for permanent injunction and release of bond were scheduled for hearing before the Honorable Robert P. Johnston. However, Judge Ervin had not yet ruled upon the matters from the 10 November 2008 hearing. Judge Johnston entered a consent order which held that the McManuses' "Motion for Summary Judgment and Plaintiffs' Motion for Permanent Injunction and Release of Bond shall be held in abeyance by the Court until such time as the Partial Summary Judgment Order has been entered by Judge Ervin and, after entry of such Order, the parties may re-calendar these motions." The partial summary judgment order referenced by the consent order is the 9 December 2008 order, in which Judge Ervin granted partial summary judgment in favor of plaintiffs, ordering that plaintiffs were entitled to judgment as a matter of law that the restrictive covenants applied to the Matos properties. The trial court also dismissed Matos's counterclaims for declaratory judgment, reformation, and rescission of the Matos deeds. No notice of appeal has ever been filed as to this order.

The trial court entered an order for permanent injunction on 4 August 2009, which contains detailed findings of fact regarding the restrictive covenants and ordered Matos to "remove any and all structures, including without limitation fencing, on either the First Matos Property or the Second Matos Property which have been constructed in violation of the terms and conditions of the Restrictions."[2] On 11

2. The order also provided that the parties agreed that the fencing would remain in place pending appeal, "with the understanding that Defendant Matos will take no further action to develop his Property in violation of the Restrictions during the pendency of the appeal."

August 2009, Matos filed a notice of appeal from the 4 August 2009 order; this appeal was ultimately dismissed as interlocutory by this Court on 3 August 2010, in *Barfield v. Matos*, ___ N.C. App. ___, 698 S.E.2d 556, 2010 N.C. App. LEXIS 1423, at *9-10 (N.C. App. Aug. 3, 2010) (unpublished) ("Here, the trial court awarded partial summary judgment for Plaintiffs and entered an order for permanent injunction. The trial court's order for partial summary judgment only disposed of Defendant's counterclaims for declaratory judgment, rescission, and reformation. The record before us does not reflect any resolution of Plaintiffs' claims against Defendant for monetary damages, Plaintiffs' crossclaims against the Third-Party Defendants seeking monetary damages for alleged breach of covenant and negligent misrepresentation, or Defendant's crossclaims against the Third-Party Defendants also seeking monetary damages for alleged breach of warranty and negligent misrepresentation. Based on the record before this Court, these actions remain before the trial court for further disposition, and thus, the trial court's order for permanent injunction is interlocutory.") ("the first appeal").

While the prior interlocutory appeal was pending before this Court, on 30 March 2010, the trial court heard the McManuses' motion for summary judgment, which had been "held in abeyance" by the 4 December 2008 consent order. In that motion, the McManuses requested dismissal of Matos' claims for negligent misrepresentation and breach of warranty and the plaintiffs' crossclaims for breach of covenant and negligent misrepresentation. The trial court executed an order granting the McManuses' motion for summary judgment on 8 April 2010 and, on 26 April 2010, Matos filed notice of appeal from "the Order for Summary Judgment entered on April 8, 2010[.]" On or about 3 June 2010, Matos filed a "notice of voluntary dismissal without prejudice pursuant to Rule 41 of his claims in this action against Third Party Defendants Scott Whittle, Elizabeth R. Whittle, Paul Gavrilyuk and Alena Gavrilyuk." On 5 August 2010, plaintiffs filed a notice of voluntary dismissal of their "claim for damages against [Matos] and its [sic] crossclaims against [the McManuses and the McManus trusts.]

## II. Scope of review

**[1]** Although not addressed by any of the briefs, we must first consider the proper scope of this appeal. Matos' issues on appeal as noted in his brief specifically relate to (1) the 9 December 2008 order for partial summary judgment; (2) the 4 August 2009 order granting permanent injunction; and (3) the 8 April 2010 order for summary

judgment in favor of the McManuses.[3] Yet, Matos has appealed only one order: the 8 April 2010 summary judgment order, which granted summary judgment in favor of the McManuses. We noted in the first appeal that Matos appealed from the "Order for Permanent Injunction and Release of Bond entered on July 24, 2009" but did not appeal the 9 December 2008 partial summary judgment order, which concluded "as a matter of law that the relevant restrictive covenants in this action do apply to and encumber" all of Matos' real property in dispute in this action. *See Barfield,* 2010 N.C. App. LEXIS 1423, at *13 (unpublished). Thus, we did not consider the merits of the 9 December 2008 order in the first appeal. Matos gave his second notice of appeal on 26 April 2010, but this notice of appeal did not include the 9 December 2008 order. The notice of appeal also did not include the 4 August 2009 order granting permanent injunction, which was the subject of the first appeal, but that appeal was still pending at the time; the opinion was filed on 3 August 2010. Because notice of appeal is a jurisdictional requirement, we must determine which issues we have jurisdiction to consider.

A. Petition for Certiorari

In recognition of the problem caused by the lack of a notice of appeal from the 4 August 2009 order, on 13 October 2010, Matos filed a petition for writ of certiorari requesting that we "reconsider on the merits Appellant Matos' appeal in No. 09-1711 at the same time it considers Appellant Matos' appeal in No. COA 10-1090." Matos notes that he timely filed notice of appeal from the 4 August 2009 order in the first appeal, and that he timely filed notice of appeal from the 8 April 2010 order in this appeal. Although the text of Matos' petition specifically identifies these orders as the orders for which review is sought, he attached as exhibits to the petition the 9 December 2008 order and the 4 August 2009 orders as those for which review is sought. The petition does not address why notice of appeal was never given, in either appeal, as to the 9 December 2008 order.

Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure governs when we may grant review by certiorari:

---

3. We note that Matos identifies the orders by the date upon which they were executed by the trial court instead of the date upon which they were filed. Pursuant to N.C. Gen. Stat. § 1A-1, Rule 58 (2009), "a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." We have therefore identified the orders by the date of filing as the date of entry, except as to the 8 April 2010 order, because our record does reflect the date of filing of this order.

> The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief.

N.C.R. App. P. 21(a)(1).

Although we have no authority to "reconsider" the issues determined by this Court in the first appeal, as Matos requests, we believe that the substance of Matos' petition is a request to review the 4 August 2009 order for permanent injunction in this appeal. As noted above, the first appeal was still pending when the second notice of appeal was given, so no appeal was noticed as to the 4 August 2009 order in this appeal. We did not review the merits of the 4 August 2009 order in the first appeal as it was dismissed as interlocutory. We believe that this falls within Rule 21(a)(1), as Matos lost his "right to prosecute an appeal" as to the 4 August 2009 order "by failure to take timely action" by filing a second notice of appeal as to the same order. We therefore grant Matos' petition for certiorari as to the 4 August 2009 order.

As noted above, the petition for certiorari includes as an attachment the 9 December 2008 order as well, although the text of the petition does not address it specifically. The petition states that

> Appellant Matos' Petition for Writ of Certiorari arises as a result of the North Carolina Court of Appeals' dismissal on 3 August 2010 of Appellant Matos' timely appeal from an Order entered by Judge Robert C. Ervin in Mecklenburg County Superior Court on 4 August 2009 granting partial summary judgment in favor of the Plaintiff and imposing a permanent injunction against Defendant/ Appellant Matos. The stated reason for the dismissal was that the appeal was interlocutory.

> . . . .

> Appellant Matos respectfully asks the Court in its discretion and without prejudice to the Plaintiffs or Third Party Defendants to allow him to bring to the Court for reconsideration on the merits the issues arising from his appeal of the first Order entered on 4 August 2009.

However, the petition later identifies Exhibit A to the petition as "a copy of the Order entered by Judge Ervin sought to be reviewed[,] but Exhibit A includes two orders, the 9 December 2008 order and the 4 August 2009 order. The "Defendant/Appellant's Notice of Appeal at issue in this first appeal" is attached as Exhibit B, but this notice identifies only "the Order for Permanent Injunction and Release of Bond entered on July 24, 2009 [sic]" and not the 9 December 2008 order. As noted above, no notice of appeal was given as to the 9 December 2008 order in the first appeal. The petition does not state that Matos lost his right to prosecute an appeal as to the 9 December 2008 order by failure to take timely action, even if we construe the petition as requesting review of the 9 December 2009 order. Therefore, Matos has not shown any grounds permitting review by certiorari as to the 9 December 2008 order, and his petition is denied as to this order.

B. Appeal of 8 April 2010 Summary Judgment Order

[2] We first note that the trial court had jurisdiction to proceed with hearing on the McManuses' motion for summary judgment during the pendency of the first appeal, which we determined was interlocutory and non-appealable. We have stated that "[w]here a party appeals from a *non*appealable interlocutory order, however, such appeal does not deprive the trial court of jurisdiction, and thus the court may properly proceed with the case." *RPR & Associates, Inc. v. The University of North Carolina*, 153 N.C. App. 342, 347, 570 S.E.2d 510, 514 (2002), *appeal dismissed and disc. review denied*, 357 N.C. 166, 579 S.E.2d 882 (2003). As all of the pending claims, crossclaims, and counterclaims as to all parties have been disposed of either by order or by voluntary dismissal, the 8 April 2010 summary judgment order is a final and appealable order. *See Goodman v. Holmes & McLaurin Attorneys at Law*, 192 N.C. App. 467, 471, 665 S.E.2d 526, 530 (2008) (noting that interlocutory orders are not immediately appealable but "[p]laintiff's voluntary dismissal of [the] remaining claim [did] not make the appeal premature but rather ha[d] the effect of making the trial court's grant of partial summary judgment a final order[,]" and thus appealable. (citation and quotation marks omitted)). Matos gave timely notice of appeal as to the 8 April 2010 summary judgment order, so we have jurisdiction to consider this portion of the issues on appeal.

C. 9 December 2008 Order for Partial Summary Judgment

[3] The 9 December 2008 order for partial summary judgment is the most damaging order, from Matos' legal perspective in this case, but no appeal has ever been taken from this order.

BARFIELD v. MATOS

[215 N.C. App. 24 (2011)]

Compliance with Rule 3 is required for this Court to have jurisdiction to consider plaintiff's appeal. *See Bailey v. State,* 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000) ("In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure.") However,

> we may liberally construe a notice of appeal in one of two ways to determine whether it provides jurisdiction . . . . First, a mistake in designating the judgment or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake. Second, if a party technically fails to comply with procedural requirements in filing papers with the court, the court may determine that the party complied with the rule if the party accomplishes the functional equivalent of the requirement.

*Dafford v. JP Steakhouse LLC,* ___ N.C. App. ___, ___, 709 S.E.2d 402, 405 (2011).

In the first appeal, we noted that we had no jurisdiction to consider the 9 December 2008 order, as no notice of appeal had been filed. *See Barfield,* 2010 N.C. App. LEXIS 1423, at *13 (unpublished). We thus made no determination as to the 9 December 2008 order in the first appeal. We are not prevented by the doctrine of the law of the case from considering these issues, if properly presented to us in this appeal. *See Goetz v. North Carolina Dept. of Health & Human Services,* ___ N.C. App. ___, ___, 692 S.E.2d 395, 402-03 ("The law of the case doctrine has been summarized as follows: The doctrine of the law of the case generally prohibits reconsideration of issues which have been decided by the same court, or a higher court, in a prior appeal in the same case. Provided that there was a hearing on the merits and that there have been no material changes in the facts since the prior appeal, such issues may not be re-litigated in the trial court or reexamined in a second appeal."), *disc. review denied,* 364 N.C. 325, 700 S.E.2d 751 (2010). In addition, Matos' proposed issues on appeal do not clearly set forth the proposed issues on appeal we should address as to the 9 December 2008 order, although several of his proposed issues do mention this order. Specifically, Matos sets forth two sets of proposed issues: the first, "with regard to the 24 July 2009 [sic] order" and the second, "with regard to the 27 April 2010

[sic] order." Perhaps Matos did not set forth proposed issues on appeal with regard to the 9 December 2008 order, despite the fact that several of the proposed issues refer to that order, because no notice of appeal was filed as to this order. However, we do not have jurisdiction to consider an appeal as to the 9 December 2008 order as no notice of appeal has ever been given. As discussed above, no grounds for review of the 9 December 2008 by certiorari exist. Therefore, we have no jurisdiction to review the 9 December 2008 order.

In conclusion, we have jurisdiction to review only the 4 August 2009 order for permanent injunction and release of bond and the 8 April 2010 summary judgment order.

## III. Standards of Review

[4] Matos argues that our standard of review as to the 8 April 2010 summary judgment order is *de novo*, and this is correct, although the true standard of review in this case is somewhat more complicated because of the 4 August 2009 order.

> We review a trial court's order for summary judgment de novo to determine whether there is a "genuine issue of material fact" and whether either party is "entitled to judgment as a matter of law." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citing N.C.G.S. § 1A-1, Rule 56(c)).

*Robins v. Town of Hillsborough*, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007). Further, the "evidence is viewed in the light most favorable to the non-moving party." *Sturgill v. Ashe Memorial Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007) (citation and quotation marks omitted), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008).

In his argument, Matos fails to recognize that the 4 August 2009 order granting permanent injunction is not a summary judgment order, and it includes numerous findings of fact. "[W]here the trial court decides questions of fact, we review the challenged findings of fact and determine whether they are supported by competent evidence. If we determine that the challenged findings are supported by competent evidence, they are conclusive on appeal." *Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 597, 632 S.E.2d 563, 571 (2006) (citations omitted), *appeal dismissed and disc. review denied*, 361 N.C. 350, 644 S.E.2d 5 (2007). As to the 4 August 2009 order, we also note that Matos does not argue that the findings are not supported by competent evidence; he argues only that there were

genuine issues of material fact as to some of the facts found by the trial court. But the existence of a genuine issue of material fact is irrelevant in the context of the trial court's findings after a hearing on the merits of plaintiffs' claim for injunctive relief; the trial court considered the evidence and resolved any issues of fact as provided by the findings of fact. Although all parties had requested trial by jury in their pleadings, our record does not indicate that any party requested jury trial upon any of the factual issues presented at the hearing which resulted in the 4 August 2009 order. We have no transcript from this hearing, and as best we can tell from the record, all parties consented to a bench trial on the claim for injunctive relief, which necessarily required the trial court to make findings of fact.[4]

> When a jury trial is waived, the court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary. *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33, and cases cited. There is no difference in this respect in the trial of an action upon the facts without a jury under Rule 52(a)(1) and a trial upon waiver of jury trial under former G.S. 1-185. Findings of fact made by the court which resolve conflicts in the evidence are binding on appellate courts.

*Blackwell v. Butts*, 278 N.C. 615, 619, 180 S.E.2d 835, 837 (1971).

Therefore, the trial court's findings of fact as contained in the 4 August 2009 order are binding upon this Court. We then may consider *de novo* only whether the conclusions of law are supported by the findings of fact, *Calhoun*, 178 N.C. App. at 597, 632 S.E.2d at 571, and whether the trial court abused its discretion in granting injunctive relief.

> A mandatory injunction may be an appropriate remedy to compel removal of structures erected in violation of restrictive covenants. *Crabtree v. Jones*, 112 N.C. App. 530, 534, 435 S.E.2d 823, 825 (1993), *disc. review denied*, 335 N.C. 769, 442 S.E.2d 514 (1994). The issuance of such an injunction depends upon the equities of the parties and such balancing is clearly within the province of the trial court. *Id.* "Whether injunctive relief will be granted to restrain the violation of such restrictions is a matter within the sound discretion of the trial court . . . and the appellate

---

4. We are also unable to determine from the record if a testimonial hearing was held or if the court considered only the depositions and other documents presented to the court. The order includes several findings which note that "Matos testified" and "McManus testified" to certain facts, but we do not know if this testimony was from a deposition or presented at the hearing.

court will not interfere unless such discretion is manifestly abused." 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 313 (1965).

*Buie v. High Point Associates Ltd. Partnership*, 119 N.C. App. 155, 161, 458 S.E.2d 212, 216, *disc. review denied*, 341 N.C. 419, 461 S.E.2d 755 (1995).

IV. Substantive Analysis

A.   Applicability of Restrictive Covenants to Matos property

**[5]** Matos first argues that the trial court erred as a matter of law in its conclusion that the restrictive covenants apply to his property. The trial court made this determination in the 9 December 2008 order granting partial summary judgment. The trial court specifically ordered "[t]hat the Plaintiffs are entitled to judgment as a matter of law that the relevant restrictive covenants in this action do apply to and encumber" the Matos property. The 4 August 2009 order repeats this conclusion and also includes many findings of fact regarding the deeds and restrictive covenants. Our Supreme Court in *Reed v. Elmore* stated the following rule as to recorded restricted covenants:

> if a deed or a contract for the conveyance of one parcel of land, with a covenant or easement affecting another parcel of land owned by the same grantor, is duly recorded, the record is constructive notice to a subsequent purchaser of the latter parcel. The rule is based generally upon the principle that a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor.

246 N.C. 221, 231, 98 S.E.2d 360, 367 (1957) (citations and quotation marks omitted).[5] Matos argues that *Reed* is not applicable to the facts before us in determining whether the restrict covenants in the Moss deed are applicable to his property, mostly based upon the errors in

---

5. *Reed* has been criticized in subsequent cases. *See Gregory v. Floyd*, 112 N.C. App. 470, 476, 435 S.E.2d 808, 811-12 (1993) (stating that the rule in *Reed* "charges purchasers with constructive notice of all that 'could be discovered by a search of the deeds and records, whether within the direct chain of conveyances or outside the direct chain of conveyances. . . .['] When this requirement is considered with the rule existent that deeds are construed as a whole and meaning is given to every part without reference to formal divisions of the deed, it becomes obvious that the title searcher is given an entirely impracticable and unreasonable task." (quoting J. Webster, Webster's Real Property Law in N.C. § 503 at 687-88 (Hetrick and McLaughlin, rev. ed. 1988)); *Stegall v. Robinson*, 81 N.C. App. 617, 620-21, 344 S.E.2d 803, 805-06, *disc. review denied*, 317 N.C. 714, 347 S.E.2d 456 (1986). However, the rule in *Reed* is still good law.

recordation of the deeds as noted above. Yet, also as discussed above, we do not have jurisdiction to review the trial court's determination that the restrictive covenants apply to the Matos property, in the absence of a notice of appeal or grounds for review by certiorari. Matos' arguments as to the applicability of the restrictive covenants are therefore dismissed.

## B.  4 August 2009 Order for Permanent Injunction

**[6]** Matos argues that even if the restrictions apply to his property, they "do not absolutely prohibit the construction of a fence. They do state that if a fence or other structure is to be constructed, it must first be approved by selected owners in the subdivision. Why only owners of Tracts 1 and 2 should have veto authority is unclear . . . ." He further argues that "[g]iven that Matos is operating a farm, complete with livestock, under the Farm Program, he is obligated to have fencing—and not just any type of fencing, but barbed wire fencing or other fencing adequate to contain horses, cows or other farm animals."

As discussed above, Matos does not argue that any of the trial court's findings of fact are not supported by the evidence, and thus they are binding on appeal. The trial court found that Matos "wanted Tracts 8 and 9 consolidated to ensure the land would qualify for farm use[.]" The trial court also found that

22.  The Restrictions state in Paragraph 2 that, "No dwelling, outbuilding or any accessory feature to the dwelling or any other structure, including fencing and pools, shall be located and constructed upon any tract until the completed construction plans (the "Plans") are approved by the then owners of tracts 1 and 2 together with Mr. or Mrs. Coy L. McManus or the assignee of Mr. or Mrs. McManus."

23.  The Restrictions state in Paragraph 3 that, "Only One residence shall be permitted on each tract and no residence shall be constructed or permitted to remain on any tract unless it shall have at least 3000 square feet of heated floor space."

24.  Defendant Matos is currently using the First and Second Matos Properties as a farm. Defendant Matos has indicated a desire in the future to subdivide his property, install an access road, and develop high-end residential homes on not less than one acre tracts.

BARFIELD v. MATOS

[215 N.C. App. 24 (2011)]

25. Defendant Matos has not submitted any Plans for construction on either of his tracts to any of the owners of Tract 1 or Tract 2 for approval. In July 2007, he installed barbed wire fencing on his property to contain his cows and horses.

26. By letter dated August 16, 2007, counsel for the Plaintiffs, Scott I. Perle, notified Defendant Matos that he was in violation of the Restrictions and demanded that he "cease and desist construction of the fencing and remove the fence posts which have already been installed" by August 27, 2007. Subsequently, Defendant Matos completed construction of the fencing.

These findings of fact are binding, and Matos does not cite any legal authority to support his argument that the trial court abused its discretion by requiring removal of the barbed wire fencing, which had not been pre-approved as required by the restrictions. As Matos has failed to present any legal authority or argument as to an abuse of discretion, this argument is abandoned. *See Holleman v. Aiken*, 193 N.C. App. 484, 508, 668 S.E.2d 579, 594 (2008) ("[P]laintiff has cited no legal authority in support of her argument, and pursuant to North Carolina Rule of Appellate Procedure 28(b)(6), it is deemed abandoned. *See* N.C.R. App. P. 28(b)(6).").

C. 8 April 2010 Order for Summary Judgment

1. Negligent Misrepresentation

[7] Matos argues that the trial court erred by granting summary judgment in favor of the McManuses on his claim for negligent misrepresentation as there were genuine issues of material fact as to whether Matos reasonably relied upon McManus' misrepresentations. As discussed above, the standard of review for this case is complicated by the existence of an order which we have affirmed, and which does include many findings of fact. The usual standard of review is a *de novo* determination of "whether there is a 'genuine issue of material fact' and whether either party is 'entitled to judgment as a matter of law.'" *Robins*, 361 N.C. at 196, 639 S.E.2d at 423; *Summey*, 357 N.C. at 496, 586 S.E.2d at 249; N.C. Gen. Stat. § 1A-1, Rule 56(c). Yet, in this instance, even if there was a dispute as to a material fact prior to the 4 August 2009 order, we must consider the facts as determined by that order. As to any facts not determined by the 4 August 2009 order, we shall, as usual for purposes of summary judgment review, consider the evidence in the light most favorable to Matos as the party opposing summary judgment. *See Sturgill*, 186 N.C. App. at 626, 652 S.E.2d at 304.

In his fourth claim for relief in his third party complaint against the McManuses, for negligent misrepresentation, Matos alleged that

36. In the course of the conveyance of properties to Matos, the McManuses supplied information to Matos for purposes of guidance and/or reliance.

37. The McManuses had a duty to accurately and truthfully convey information and guidance, as owners of the Property, to Matos as a prospective buyer of their property.

38. The McManuses failed to exercise that care and competence in obtaining and communicating the information which Matos was justified in expecting, including accurate information regarding whether the property purchased by Matos would be subject to certain restrictions including, but not limited to, restrictions on its use as a farm and restrictions on subdividing.

39. The McManuses negligently provided false and misleading information to Matos to the effect that the Property being purchased could be used as a farm without restrictions.

40. The McManuses negligently provided false and misleading information to Matos to the effect that there were no restrictions on the ability of Matos to subdivide the First or Second Matos Properties.

41. Matos justifiably relied on these misrepresentations to his damage and detriment.

42. If and to the extent it were to be ultimately determined that Matos is bound by restrictions on the Property, Matos is entitled to damages from the McManuses for negligent misrepresentation, including out-of-pocket losses and consequential damages in excess of $10,000.00, the amount of damages to be proven at trial.

There was no dispute that Mr. McManus told Matos when he first considered purchasing the property that there were no restrictions on it preventing farm use. In addition, the trial court found in the 4 August 2009 order that "McManus testified that he did not intend to impose Restrictions on the First Matos Property or the Second Matos Property, notwithstanding the prior Moss Deed which states that Tracts 1 through 7 are to be restricted." Matos did not realize that he was purchasing property which was subject to restrictions of any sort, much less restrictions which would prevent his intended use of the property as a farm.

We have stated that

" '[t]he tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she <u>supplies false information</u> for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information.' " *Ausley v. Bishop*, 133 N.C. App. 210, 218, 515 S.E.2d 72, 78 (1999) (emphasis added) (quoting *Fulton v. Vickery*, 73 N.C. App. 382, 388, 326 S.E.2d 354, 358 (citation omitted), *disc. review denied*, 313 N.C. 599, 332 S.E.2d 178 (1985)); *see also Driver v. Burlington Aviation, Inc.*, 110 N.C. App. 519, 525, 430 S.E.2d 476, 480 (1993) (emphasis omitted) ("[i]n this State, we have adopted the Restatement 2d definition of negligent misrepresentation and have held that the action lies where pecuniary loss results from the supplying of false information to others for the purpose of guiding them in their business transactions").

*Pinney v. State Farm Mut. Ins. Co.*, 146 N.C. App. 248, 256, 552 S.E.2d 186, 191-92 (2001), *disc. review denied*, 356 N.C. 438, 572 S.E.2d 788 (2002).

Matos is correct that Mr. McManus "supplie[d] false information . . . for the guidance of others in a business transaction," *see id.*, and the McManuses do not deny this. In a light most favorable to Matos, there is also an issue as to whether Mr. McManus failed to exercise reasonable care in communicating this information to Matos, at several points during the process, both before and after Matos' first deed. But the trial court has found, and it is undisputed that the restrictions were recorded in Mecklenburg County with the Moss deed, which was prior to Matos' first deed, and the same restrictions were recorded in Cabarrus County with the Barfield deed, prior to Matos' second deed, which extended his land into Cabarrus County. The restrictive covenants were a matter of record in both counties prior to Matos' purchase of land in each county.

It has also been held that when a party relying on a "misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence."

*Id.* at 256, 552 S.E.2d at 192 (quoting *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999)). Matos

has neither alleged nor forecast any evidence that he was "denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *See id.* Mr. McManus' misrepresentations did not prevent Matos from investigating title to the property or hiring an attorney to protect his interests. In fact, Matos had an attorney representing him throughout the entire process, from the contract for purchase through both closings. His attorney acknowledged that his title search should have revealed the existence of the restrictive covenants in the Moss deed in Mecklenburg County. Matos argues that the negligence of his attorney should not be imputed to him. However, he cites no legal authority to this effect. The case he cites, *Hodge v. First Atlantic Corporation*, 6 N.C. App. 353, 169 S.E.2d 917 (1969), citing *Griel v. Vernon*, 65 N.C. 76 (1871), is inapposite; *Hodge* addressed setting aside a default judgment because of excusable neglect where a client has relied upon his attorney to file an answer. 6 N.C. App. at 357-58, 169 S.E.2d at 920-21. In contrast, the case of *Hudson-Cole Dev. Corp. v. Beemer* addresses just this issue in the context of a claim of negligent misrepresentation arising from a business transaction where the pertinent facts were available on the public record. 132 N.C. App. at 346, 511 S.E.2d at 312-13. Where the third-party plaintiff Beemer alleged that he was induced by negligent misrepresentations to execute a subordination agreement, this Court noted that the misrepresentation could have discovered by reference to the " 'Assignment of Security Interest in Note and Deed of Trust,' which was recorded 22 January 1986 with the Chatham County Register of Deeds in Deed Book 490, Page 120, [which] accurately describes the partial nature of the interest held by Mellott as a result of the assignment." *Id.* We also noted that Beemer did "not allege that he was in any way prevented from learning the truth about Mellott's interest." *Id.* at 346-47, 511 S.E.2d at 313. Under these circumstances, this Court held "that Beemer's reliance on the misrepresentation in the subordination agreement was unreasonable as a matter of law." *Id.* at 347, 511 S.E.2d at 313. Likewise, here, the restrictive covenants were a matter of record which could have been, and should have been, discovered by Matos' attorney. Thus, Matos' reliance upon Mr. McManus' misrepresentations was unreasonable as a matter of law, and the trial court properly granted summary judgment dismissing the claim for negligent misrepresentation.

BARFIELD v. MATOS

[215 N.C. App. 24 (2011)]

2.    Breach of Warranty

[8]   Matos alleged as his fifth claim for breach of warranty.

44. The McManuses conveyed to Matos by North Carolina General Warranty Deeds the Matos Properties described in the Complaint.

45. The Warranty Deeds expressly provide that the "grantor covenants with the grantee that grantor is seized of the premises in fee simple, has a right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that grantor will warrant and defend the title against the lawful claims of all persons whomsoever except for the exceptions hereinafter stated."

46. The McManuses, as grantors, did not in fact own the Property in fee simple as the Property was owned by the Revocable Trusts of the McManuses.

47. The McManuses have not defended Matos' title as against the Plaintiffs' claim that there are restrictions on the First and Second Matos Properties notwithstanding the language of the Matos Deeds.

48. If and to the extent it is determined as a matter of law that Matos does not have unrestricted title to the First and Second Matos Properties, then they have breached the covenants as set forth in the July 14, 2005 Deed to Matos to the extent they were not the owners in fee simple of the Property and failed to disclose to Matos this fact and other facts which were relevant and material to his decision to purchase the Property.

49. If and to the extent it is determined as a matter of law that Matos does not have unrestricted title to the First and Second Matos Properties, and the McManuses have failed to defend Matos' title to the First and Second Matos Properties, then the McManuses have breached the covenants in the General Warranty Deeds.

50. The McManuses' acts and/or omissions as herein described constitute breach of the warranties set forth in the Deed.

51. If and to the extent it is ultimately determined that Matos is bound by the Restrictions on the Property, this breach has caused Matos damages in excess of $10,000.00.

(Emphasis added.)

FISHER v. COMMC'N WORKERS OF AM.

[215 N.C. App. 46 (2011)]

Matos reiterates his argument that McManus told him that there were no restrictions on the property, although this was incorrect. However, Matos cites no legal authority in support of this argument. In addition, the deeds each stated that

> Title to the property hereinabove described is subject to the following exceptions:
>
> The lien of all valid and enforceable easements, rights-of-way, restrictions, covenants, conditions, and *restrictions of record;* except, however, this instrument does not reimpose any of the same.

(Emphasis added.)

As discussed extensively above, the restrictive covenants were "of record." The trial court properly granted summary judgment dismissing Matos' claim for breach of warranty of title. Accordingly, we affirm the trial court's orders granting permanent injunction and summary judgment in favor of the McManuses.

AFFIRMED.

Judges CALABRIA and HUNTER, JR., Robert N. concur.